IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| HENRY A.V.L., | Civil No. 1:26-cv-03354-MWJS |
| Petitioner, | ORDER GRANTING MOTION TO ENFORCE IN PART |
| vs. | |
| WARDEN OF THE CENTRAL VALLEY ANNEX DETENTION FACILITY, *et al.*, | A# 221-489-951 |
| Respondents. | |

## **ORDER GRANTING MOTION TO ENFORCE IN PART**

Petitioner Henry A.V.L.[1] moves this court to reopen his case and to enforce its

prior judgment ordering Respondents to provide Petitioner with a bond hearing before

a neutral decisionmaker in accordance with 8 U.S.C. § 1226(a) and its implementing

regulations.  Dkt. No. 16.

The relevant factual and legal background is described in the court's order

granting the petition for writ of habeas corpus in part, *Henry A.V.L. v. Warden of the*

*Cent. Valley Annex Detention Facility*, No. 1:26-cv-03354-MWJS, 2026 WL 1391273 (E.D.

Cal. May 18, 2026).  In that order, the court found that Respondents' detention of

---

[1]     For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Correctional Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Petitioner's first name and the initials of his last name are used in this order.

Petitioner without a bond hearing violated the Immigration and Nationality Act (INA).

Accordingly, the court ordered Respondents to either release Petitioner or provide him

with "a bond hearing before a neutral decisionmaker in accordance with 8 U.S.C. §

1226(a) and its implementing regulations" within seven days. *Id.* at *2.

A bond hearing was held for Petitioner on May 20, 2026. At the hearing,

Petitioner (who was represented by counsel) was questioned by the immigration judge

(IJ) "concerning danger and flight" and was "provided ample opportunity to present

documentary and testimonial evidence." Dkt. No. 15-1, at pg. 1. That evidence

included a "statement from Counsel and . . . a letter from a sponsor, proof of business

license, taxes of the sponsor, [Petitioner's] Birth Certificate, proof of pregnancy of

[Petitioner's] girlfriend, [Petitioner's] passport and [Petitioner's] tax returns from 2020

to 2022," as well as the I-213 generated by the Department of Homeland Security. Dkt.

No. 8, at pg. 4.

After hearing from Petitioner and Respondent and considering the evidence, the

IJ concluded that Petitioner had not met his burden to establish his eligibility for bond

by a preponderance of the evidence. Dkt. No. 15-1. In a written order, the IJ found that

Petitioner was not a danger to the community but did pose a "flight risk," explaining:

> Respondent indicated he has no fear of returning back to his country. The Court
> confirmed that twice even after his attorney indicated she may pursue asylum
> relief. However, with no fear of return, Respondent has no relief whatsoever
> which would be available to him in Immigration Court. The Court finds
> Respondent at this time has no incentive to return to court. *See Matter of
> Siniauskas*, 27 I. & N. Dec. 207, 209 (BIA 2018) (citing *Matter of Andrade*, 19 I. & N.

2

Dec. 488, 490 (BIA 1987) (stating that a respondent who is likely to be granted relief has a greater motivation to appear for removal than one who has less potential to obtain relief)).  The Court finds Respondent is an extreme flight risk, and Respondent has not met his burden to show that he will likely appear.  Accordingly, there is no bond amount to mitigate the risk of flight.

Dkt. No. 15-1, at pg. 2.

The full transcript sheds additional light on the IJ's finding.  During the hearing, the IJ examined Petitioner about his entry into the United States, the citizenship of his immediate family, his work history, tax filings, his girlfriend's pregnancy, and his fear of returning to his home country of Guatemala.  On that last point, the following colloquy occurred:

JUDGE TO [PETITIONER]:  Are you afraid to go back to your country?

[PETITIONER] TO JUDGE:  No.

JUDGE TO [PETITIONER]:  All right.  Thank you.

JUDGE TO [PETITIONER'S COUNSEL] MS. ALCALA:  All right.  [Petitioner's] Counsel, he doesn't have a claim for – any claim for relief.  He doesn't – he's not afraid to go back.  I understand even if he – a child is born, he's not gonna be eligible for 42B [Cancellation of Removal].  Why is he even here in the United States, Counsel?

MS. ALCALA TO JUDGE:  My understanding was that he is gonna file a Form I-589 based on fear.  I don't know if he fully understood the question.  But he does have the intent of filing a[n] Asylum Application.

JUDGE TO MS. ALCALA:  All right.  Well, he just told the Court that he has no fear of return, Counsel.  So, I understand people file I-589s every day for delay, but this Respondent is being honest with the Court and he has no fear of return.  So, what are we doing again?

MS. ALCALA TO JUDGE:  I don't know if there's other relief available to him.  My indication from his family members was that he was going to be filing an Application for Asylum based on fear.

JUDGE TO [PETITIONER]:  Sir, the Court is asking you again, and the Court does appreciate your honesty, you just told the Court that you're not afraid of returning back to your country.  Is that correct?

[PETITIONER] TO JUDGE:  Yes.

JUDGE TO [PETITIONER]:  All right.

JUDGE TO MS. ALCALA:  Counsel, it's your burden. He has no relief. He's not a danger, but I just don't understand what the purpose would be to release him just to delay and delay.  And it sounds like maybe possibly a frivolous asylum claim is what wants – what needs to be filed.

Dkt. No. 18, at pgs. 7-9.

Following this colloquy, the IJ stated her decision to deny bond, noting that Petitioner bore the burden.  The IJ explained her reasoning to Petitioner by stating: "Okay, sir, the Court is going to be denying bond in your case.  You – the reason why,

sir, is because there is no relief available to you that would allow you to even stay in this country. So, there's no reason to release you. We can complete your case, actually your removal case today even, if you wish." *Id.* at pg. 10. Petitioner indicated his intention to appeal the bond decision, and the hearing concluded.

Petitioner now seeks to reopen his case and asks the court to enforce its judgment ordering Respondents to provide him with a bond hearing pursuant to § 1226(a) and its implementing regulations. His first argument asserts that the government "bore the burden of proving flight risk or dangerousness under the clear and convincing evidence standard pursuant to 8 U.S.C. § 1226(a) and its implementing regulations," and that by placing the burden on Petitioner, Respondents failed to comply with this court's order. Dkt. No. 16, at pgs. 6-7. But as the court noted in an entering order following the receipt of Petitioner's motion, "the court's order only compelled Respondents to provide Petitioner with a bond hearing 'in accordance with 8 U.S.C. § 1226(a) and its implementing regulations.'" Dkt. No. 17 (quoting Dkt. No. 13, at pg. 5). Federal regulations in turn provide that the noncitizen must show by a preponderance of the evidence that they are not a danger to the community or a flight risk at any bond hearings held pursuant to § 1226(a). *D.L.C. v. Wofford*, 820 F. Supp. 3d 1106, 1113 (E.D. Cal. 2026) (citing *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (discussing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). Petitioner's argument that Respondents failed to

5

comply with this court's order by misallocating the burden of proof at the bond hearing is therefore unavailing.

Petitioner's other argument, that "[u]nder any burden of proof, the Immigration Judge's decision denying bond was an abuse of discretion" and thereby failed to provide Petitioner with the bond hearing to which he was entitled pursuant to § 1226(a), presents a more difficult question. *See* Dkt. No. 16, at pg. 7. As noted, it was appropriate for the IJ to require Petitioner to bear the burden of showing that he was neither a danger nor a flight risk. The IJ found that Petitioner is "not a danger," Dkt. No. 18, at pg. 8, so the only question is whether the IJ properly denied bond based on a finding that Petitioner is a flight risk. On the record before it, the court cannot say that the IJ did so.

As the IJ noted, the Board of Immigration Appeals (BIA) has held that an IJ may "consider the likelihood that relief from removal will be granted in determining whether an alien warrants bond," based on the presumption that a noncitizen has a greater likelihood of appearing for hearings when there is a possibility that some relief may be granted. *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020). But neither that case nor the other case upon which the IJ relied—*Matter of Siniauskas*, 27 I. & N. Dec. 207, 209 (BIA 2018), which the IJ cited for the proposition that "a respondent who is likely to be granted relief has a greater motivation to appear for removal than one who has less potential to obtain relief"—suggested that a flight risk finding may be based

6

*entirely* on the likelihood of potential relief.  And neither does *Matter of Andrade*, 19 I. &

N. Dec. 488 (BIA 1987), the case upon which *R-A-V-P-* and *Siniauskas* both rely.

That presents a problem, because the oral and written decisions suggest that the

IJ relied entirely upon Petitioner's prospective likelihood of relief as the sole and

dispositive factor upon which the flight risk finding rested.  And under similar

circumstances, courts throughout the Ninth Circuit have concluded that while "IJs may

consider the likelihood that relief from removal will be granted in determining whether

a flight risk, . . . the fact of a removal order—or the lack of potential forms of relief for a

potential future removal order—is not sufficient by itself to deny bond or to establish

flight risk."  *Segura Serrano v. Scott*, No. 2:26-cv-01268, 2026 WL 1674357, at *8 (W.D.

Wash. June 1, 2026); *see also Doe v. Chestnut*, 810 F. Supp. 3d 1169, 1197 (E.D. Cal. 2025);

*Cruz-Acevedo v. Scott*, No. 2:26-cv-01654, 2026 WL 1623154, at *8 (W.D. Wash. June 5,

2026); *Soriano v. Hernandez*, No. 2:26-cv-00900, 2026 WL 969764, at *5-6 (W.D. Wash. Apr.

10, 2026); *Padilla Paz v. Hernandez*, No. 2:26-cv-01394, 2026 WL 1413096, at *7-8 (W.D.

Wash. May 15, 2026); *cf. Jose G.M.L. v. Warden of the Golden State Annex Detention Facility*,

No. 1:26-cv-00047, 2026 WL 1983412, at *6 (E.D. Cal. July 9, 2026).

Taken together, these cases stand for the proposition that IJs misapply the

relevant legal standard when their flight risk determination "relie[s] solely on the

procedural posture and predicted outcomes of [a noncitizen's] pending immigration

proceedings," because even if the IJ's "predictions about the likelihood that [a

noncitizen] will obtain the relief he is seeking" are correct, "the real question is whether [the noncitizen] poses a flight risk that cannot be mitigated." *Doe*, 810 F. Supp. 3d at 1197 (cleaned up). And the record, at least in its current form, does not reflect that the IJ properly considered that question in arriving at the bond determination. The record does not indicate, for example, that the IJ considered how "the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances in this case"—including his acknowledged equities in the United States (his pregnant girlfriend, taxpayer status, U.S. citizen sponsor, and business licensure)—or why his "challenges in establishing relief automatically supported" the conclusion that he represented an extreme flight risk. *Soriano*, 2026 WL 969764, at *5. Nor does it appear that the IJ provided an explanation for "why it should be concluded that under these circumstances Petitioner would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak." *Id.* at *6.

Respondents oppose this conclusion on two grounds. They first argue that the proper procedure to challenge a bond determination is through an appeal to the BIA, and that the motion should be denied for failure to exhaust. The court is unpersuaded by this argument. There is no exhaustion requirement when the only relief Petitioner seeks is the enforcement of the court's own prior order. *Mau v. Chertoff*, 562 F. Supp. 2d 1107, 1113-14 (S.D. Cal. 2008) (citing *Harvest v. Castro*, 520 F.3d 1055, 1064 (9th Cir. 2008),

*on reh'g*, 531 F.3d 737, 748 (9th Cir. 2008)).  And although Petitioner's motion pushes the boundaries of a motion to enforce by seeking certain relief that exceeds what the court previously granted (specifically, in contending that Respondents should have borne the burden at a bond hearing), the court is not granting any more relief than it provided in its prior order, so exhaustion is not necessary here.

Respondents' other argument is that the IJ properly conducted an "individualized and fact-driven" analysis of the relevant factors under *Matter of Guerra*. Dkt. No. 19, at pg. 3.  They point to Petitioner's "[m]anner of entry and length of residence," his "[f]ixed address and family ties," and "incentive to appear" in addition to his "[p]rospects for relief."  *Id.* at pgs. 3-4.  Those are factors which might support the IJ's finding under *Matter of Guerra*, but the point here is that the record does not show that the IJ in fact considered those factors.  As discussed, the only factor which the court can readily conclude that the IJ considered was Petitioner's prospects for relief.  And for the reasons stated above, that is not sufficient—without more—to conclude that Petitioner has failed to meet his burden to establish entitlement to release under § 1226(a).  So although Respondents have offered evidence and reasoning that the IJ could have theoretically relied upon to reach her decision, "[p]ost hoc explanations of agency action by . . . counsel cannot substitute for the agency's own articulation of the basis for its decision."  *Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008).

The court appreciates the challenge the IJ confronted at the hearing:  for reasons that are not clear, Petitioner and his counsel appeared to be sending contradictory messages about Petitioner's intention to seek further relief and his prospects for obtaining it.  It is understandable, then—and not inappropriate—that the IJ relied upon that factor in reaching her decision.  Nonetheless, the IJ's apparent reliance upon that factor alone amounted to something less than the hearing that this court previously ordered pursuant to § 1226(a) and its implementing regulations.  Petitioner is entitled to a new hearing, at which he will bear the burden to establish that he is not a danger or flight risk by a preponderance of the evidence, in accordance with § 1226(a) and its implementing regulations.  At that new hearing, the IJ must consider all relevant facts and factors bearing on the question of whether Petitioner is a flight risk and whether any such risk can be adequately mitigated through measures short of detention.

For the foregoing reasons, Petitioner's Motion to Reopen and to Enforce Judgment, Dkt. No. 16, is GRANTED IN PART.  This matter is REOPENED, and the court ENFORCES its May 18, 2026 Order as follows:

Respondents are ENJOINED AND RESTRAINED from continuing to detain Petitioner unless they demonstrate, within seven days of the date of this order, that Petitioner has received a bond hearing before a neutral decisionmaker in accordance with 8 U.S.C. § 1226(a) and its implementing regulations. Respondents shall file a status

report within ten days of the date of this order, confirming whether a bond hearing has

been held and, if so, the outcome of that hearing.

    IT IS SO ORDERED.

    DATED:  July 10, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith
_____

Micah W.J. Smith
United States District Judge

---

Civil No. 1:26-cv-03354-MWJS; *Henry A.V.L. v. Warden of the Central Valley Annex Detention Facility*, et al.; ORDER GRANTING MOTION TO REOPEN IN PART